DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Maple Motley, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} This appeal arises out of joint motions to suppress filed by Appellant, Maple Motley, and co-defendant, Kakahnja Hunt, on January 29, 2008. The following is a summary of the facts surrounding the arrests which gave rise to the motions to suppress. Four City of Akron police officers testified to these facts at the hearing on the motions to suppress. Each of the officers who testified had several years of experience responding to calls involving drugs and/or firearms.
 {¶ 3} Officer Steve Hankins testified that he was on patrol on December 10, 2007. Sometime between 12:00 noon and 2:00 p.m. on December 10, Officer Hankins was driving down Blaine Ave. Officer Hankins had been asked by his supervisors to keep an eye on the *Page 2 
house located at 664 Blaine, which was a "well-known drug house." The house was a duplex. Officers had received five drug complaints regarding this address in the past year to year and a half. Officer Hankins observed a vehicle parked on the east side of the road. A woman was seated in the driver's side of the vehicle while a black male was seated in the front passenger seat. He witnessed the male exit the vehicle, walk across the street and into the backyard of 664 Blaine. Officer Hankins drove up the road and waited approximately five minutes. He then observed a black male run out of the house and jump into the car. Officer Hankins followed the car a few streets before making an investigative stop. Officer Hankins determined that the male passenger was concealing crack cocaine in his mouth. The passenger admitted that he had purchased the cocaine from the house located at 664 Blaine. The passenger also informed Officer Hankins that the man inside the house had a handgun.
 {¶ 4} At approximately 2:00 p.m., while he was completing paperwork to file charges against the male passenger, Officer Hankins received a dispatch regarding a call from a male at 660 Blaine. The caller reported that a black male with a gun had stolen a vehicle and "ran into the house next door." The address of the house next door was 664 Blaine. When he arrived at 660 Blaine, a Hispanic male was standing on the front porch. The male identified himself as Jose. Jose told Officer Hankins that he witnessed a black male with a handgun run to the house next door — 664 Blaine. Officer Hankins radioed for backup. Within approximately three minutes, several units responded to the call. Officer Hankins explained that for safety reasons, the officers had to secure the perimeter before approaching the house.
 {¶ 5} Officer Hankins testified that all the windows of the house were covered, hindering his ability to observe the actions of the people inside. According to Officer Hankins, when the officers approached the house, they observed a video surveillance camera by the front *Page 3 
door. The officers adjusted the camera so that the people inside could not see them. They then heard a female yell out, inquiring as to who was at the door. The female then flung the door open. When the door was opened, the officers could see that someone had set up a barricade inside the front door. The officers also observed two men run away from the front door, further into the house, after observing the officers. Officer Hankins entered the residence and assisted in securing the two men. One of these men was Motley. Officer Hankins observed video monitors in the house that showed the views from cameras mounted at the front and back of the house. After the officers secured the apartment, they discovered a handgun in plain view. The officers then requested a search warrant.
 {¶ 6} Officer Robert Richardson also testified at the suppression hearing. Officer Richardson also responded to the call to Blaine Ave. His testimony mirrored that of Officer Hankins. In addition, Officer Richardson testified that Jose described the suspect as a black male wearing an orange coat and carrying a silver handgun.
 {¶ 7} Officer Richardson entered the house shortly after the other officers. In addition to the handgun, the officers also saw various drug paraphernalia as well as a baggie of marijuana in plain view. At this time, the officers determined that they needed to cease their investigation until they obtained a search warrant for the house. Subsequent execution of the search warrant resulted in Motley's arrest.
 {¶ 8} Detective Tim Harvey also testified at the hearing. Detective Harvey testified that on December 10, 2007, he received a call from Detective Ted Male who had responded to the call to 664 Blaine. Detective Harvey testified that Detective Male, Officer Hankins and Officer Cresswell provided information to him so that he could prepare a search warrant for the residence. *Page 4 
 {¶ 9} Detective Ted Male also testified for the State at the hearing. Detective Male testified that he also responded to the call to 664 Blaine on December 10, 2007, after overhearing "a call being dispatched to * * * 660 Blaine[.]" Within five minutes or so of receiving the call, Detective Male and a few other officers were approaching the common door to the duplex. He testified about observing the video surveillance camera at the front door of Motley's apartment as well as the covered windows. Detective Male stated that the covered windows and surveillance camera are a type of surveillance system commonly used by drug dealers. Detective Male testified that the officers decided to approach the house instead of waiting for a search warrant because the officers had to investigate the call and because he had received information about a prior drug arrest at this location involving a firearm. He further stated that he felt time was of the essence because the longer the officers waited, the more time the individuals inside had to develop a defense or escape plan. When the officers entered the common door of the duplex, they adjusted the video monitor. The officers then heard a female shout "[w]ho's f***ing with the camera? Who's f***ing with the camera?" He testified that a female flung the door open and he saw two black males running away from the door. Detective Male recalled that one of the men was wearing orange. The officers pursued the men through the house. The officers discovered Motley in one of the bedrooms, lying on a mattress under a blanket.
 {¶ 10} On December 20, 2007, Motley was indicted on multiple felony counts involving possession of contraband. Motley pled not guilty to the charges. The trial court held a hearing on the motions to suppress on February 22, 2008. On February 29, 2008, the trial court denied the motions.
 {¶ 11} On March 27, 2008, Motley withdrew his not guilty plea and pled no contest to the following charges: receiving stolen property, pandering sexually oriented matter involving a *Page 5 
minor, trafficking in cocaine, having a weapon while under disability and receiving stolen property. The trial court found Motley guilty of the latter offenses and sentenced him to three years of incarceration. Motley timely appealed his convictions, raising one assignment of error for our review.
 II. ASSIGNMENT OF ERROR "THE FOURTH AMENDMENT TO THE U.S. CONSTITUTION IS VIOLATED WHEN POLICE ENTER A HOME WITH NEITHER A WARRANT NOR EXIGENT CIRCUMSTANCES."
 {¶ 12} In his sole assignment of error, Motley asserts that the police violated his Fourth Amendment rights when they entered his home without a warrant or absent exigent circumstances. We disagree.
 {¶ 13} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact.State v. Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v.Venham (1994), 96 Ohio App.3d 649, 653. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416.
 {¶ 14} In its decision denying Motley's motion to suppress, the trial court stated that the officers responded to a call from Motley's neighbor who observed a male with a gun enter 664 Blaine, a known drug house. Shortly before receiving this call, Officer Hankins arrested a man *Page 6 
who had purchased drugs from 664 Blaine. The court stated that the outside of the house "was fraught with indicia of drug dealing" including covered windows and video surveillance equipment. As the officers approached the door, a female flung the door open, after exclaiming her frustration that the surveillance camera had been manipulated to conceal the identity of the individual(s) standing behind the door. The officers observed two males run away from the door. Once inside the apartment, the officers observed a gun as well as other contraband. The officers obtained a warrant before searching the residence. The trial court held that, in light of the totality of the circumstances, the officers had probable cause for a warrantless entry.
 {¶ 15} After a review of the record, we find that the trial court's factual determinations are supported by competent, credible evidence. The transcript of the suppression hearing supports the trial court's findings of fact. Accordingly, we turn to the trial court's legal conclusions to conduct a de novo review. See Id.
 {¶ 16} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. See Maryland v. Buie (1990),494 U.S. 325, 331. Section 14, Article I of the Ohio Constitution has nearly identical language to the Fourth Amendment and similarly prohibits unreasonable searches and seizures. State v. Kinney (1998),83 Ohio St.3d 85, 87.
 {¶ 17} For a search or seizure to be reasonable under theFourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies.Katz v. United States (1967), 389 U.S. 347, 357; State v. Brown (1992),63 Ohio St.3d 349, 350 (overruled on other grounds). "`[P]robable cause is the existence of circumstances that warrant suspicion.'" State v.Tejada, 9th Dist. No. 20947, 2002-Ohio-5777, at ¶ 8, quoting State v.Young (2001), 146 Ohio App.3d 245, 254. "[T]he standard for *Page 7 
probable cause does not require a prima facie showing of criminal activity; rather, the standard requires `only a showing that a probability of criminal activity exists.'" Tejada at ¶ 8, quotingYoung, 146 Ohio App.3d at 254. Moreover, in analyzing whether officers had probable cause to proceed, reviewing courts will look to the totality of all the facts and circumstances as they existed at the time of the incident. See State v. Fry, 9th Dist. No. 23211, 2007-Ohio-3240, at ¶ 36, citing Illinois v. Gates (1983), 462 U.S. 213, 233.
 {¶ 18} "In the absence of a warrant or consent, the entrance of a police officer into a private home is presumptively unreasonable." (Quotations and citations omitted.) State v. Price (1999),134 Ohio App.3d 464, 467. If the State did not obtain a search warrant, it bears the burden of demonstrating that the warrantless search fell within one of the established exceptions. State v. Kessler (1978),53 Ohio St.2d 204, 207, citing State v. Call (1965), 8 Ohio App.2d 277, 288. If the search or seizure is deemed unreasonable, the evidence seized must be suppressed. Mapp v. Ohio (1961), 367 U.S. 643, 657.
 {¶ 19} The Ohio Supreme Court has explicitly recognized seven exceptions to the warrant requirement for a reasonable search. Those exceptions are:
 "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; * * * (f) the plain view doctrine[;] or (g) an administrative search[.]" (Quotations and citations omitted.) Price, 134 Ohio App.3d at 467.
 {¶ 20} Motley argues that the warrantless entry violated his constitutional rights. Specifically, Motley argues that an anonymous tip that there is an armed man inside a home does not give rise to exigent circumstances which would permit officers to enter a home without a warrant. Motley asserts that none of the witnesses who testified at the hearing suggested that exigent circumstances existed. As we further explain herein, we find that, based on the totality *Page 8 
of the circumstances, the officers had probable cause to investigate Motley's residence and exigent circumstances existed that justified the officers' entrance into the home without a warrant.
 {¶ 21} First, we disagree with Motley's categorization of this call as anonymous. The record reflects that this call was placed by a male who disclosed his address as 660 Blaine Ave. When officers arrived at this address, a man named Jose confirmed the information given in the call. As the caller disclosed his address and the police confirmed the information given by this caller when they arrived at his house, this call was not placed by an anonymous informant. See State v. English
(1993), 85 Ohio App.3d 471 (finding that a caller who disclosed her address and further told police that she was the owner of home located at that address was not a mere anonymous informant, and the information she provided could not be analyzed under the same standard applicable to anonymous tips, in deciding whether it provided reasonable suspicion of criminal activity sufficient to support an investigatory stop).
 {¶ 22} The mere fact that there may have been a firearm located in Motley's home may not, taken by itself, give officers probable cause to investigate. However, when we review the totality of the circumstances, it is apparent that the officers had probable cause to investigate.Tejada, supra, at ¶ 9. The record reflects that officers had received numerous complaints about drug trafficking at 664 Blaine. Earlier in the day, Officer Hankins arrested an individual who admitted that he had purchased cocaine from the 664 Blaine address. This individual also informed Officer Hankins that the man inside the house had a handgun. A short time later, Officer Hankins received a dispatch regarding a call from a man at 660 Blaine that a black male with a gun had stolen a vehicle and "ran into the house next door." Upon responding to the scene, Officer Hankins encountered a man named Jose who reported that a black male with a *Page 9 
handgun had run into the house next door — 664 Blaine. As officers approached Motley's house, they observed several indicators of drug activity including covered windows and an "eyeball" video surveillance camera.
 {¶ 23} This Court has previously found probable cause existed to justify investigation of a residence in a factually similar case. InState v. White, 9th Dist. Nos. 23955, 23959, 2008-Ohio-2432, we found that officers had probable cause to investigate a residence where (1) officers had learned that the homeowner had recently purchased a drug commonly used to manufacture methamphetamine, (2) officers conducted a traffic stop of the homeowner's son the day before the investigation during which officers discovered a canister containing a substance used to produce methamphetamine, and (3) upon approaching the house, officers smelled methamphetamine. See also State v. Perkins, 9th Dist. No. 21322, 2003-Ohio-3156 (finding probable cause to search a residence where officers conducted a controlled drug purchase from house and upon approaching house, officers observed a person inside quickly retreat from the window). Given the officers' training and experience, we find that the officers had probable cause to investigate Motley's home.
 {¶ 24} "Exigent circumstances `means generally that the delay associated with securing a warrant would result in endangering police officers or other individuals or would result in concealment or loss of evidence.'" State v. Willis (July 27, 1994), 2d Dist. No. 14276, at *2, quoting Katz, Ohio Arrest Search and Seizure, (3 Ed.) 155. When evaluating the exigencies of entering a home a `totality of circumstances' approach is taken. Id. This Court has held that "[a]n urgent need to prevent evidence from being lost or destroyed will constitute exigent circumstances." State v. Smith (Nov. 30, 1994), 9th Dist. No. 94CA005821, at *2. "`This need may be particularly compelling where narcotics are involved[.]'" Id., quoting United States v. *Page 10 Sangineto-Miranda (C.A.6, 1988), 859 F.2d 1501, 1511. This Court has previously held that, based on the destructible nature of drugs, exigent circumstances existed to support a warrantless entry. Smith, supra;State v. Roberts, 9th Dist. No. 21169, 2003-Ohio-363, at ¶ 14.
 {¶ 25} The mere fact that there may have been a firearm located in Motley's home may not, taken by itself, constitute exigent circumstances. However, when we review the totality of the circumstances, it is apparent that the situation constituted an exigent circumstance justifying a warrantless search to avoid endangering officers or loss or concealment of evidence. Smith, supra.
 {¶ 26} Here, the officers observed numerous indicators of a narcotics trafficking operation. Officer Hankins had arrested an individual earlier in the day who stated that he had purchased cocaine from 664 Blaine and that the man who sold the drugs had a handgun. See State v.Evans (1993), 67 Ohio St.3d 405 (recognizing that a connection exists between drugs and guns to such an extent that if drugs are present, it is reasonable to assume that weapons may also be present and the suspect may be armed). Officers had also previously received several complaints of drug trafficking at this address. The next-door neighbor, Jose, had reported that a black male brandishing a handgun, had stolen a vehicle and had run into the house next door. When officers approached, they noticed that the windows were covered and that someone had installed an eyeball video surveillance camera. The officers testified that they often observed covered windows and video surveillance at drug houses.
 {¶ 27} Furthermore, once the young woman flung open the door, officers observed a barricade inside the front door, and saw two men flee from the door. One of the men was wearing orange, as Jose has reported. Based on the tips officers received earlier in the day, it was reasonable for them to believe that the men might be armed. A delay to obtain a search *Page 11 
warrant in this case could have provided Motley and his co-defendant ample time to dispose of evidence, including the narcotics. Moreover, such delay could further jeopardize the safety of the officers by affording the defendants more time to obtain further weapons, putting at great risk officers who were attempting to secure the perimeter outside the house.
 {¶ 28} Motley suggests, without support, that the fact that the officers waited a few minutes before entering the home shows that there were no exigent circumstances. However, Motley has failed to cite to any case law in support of this assertion. See App. R. 16(A)(7). "It is the duty of the appellant, not this court, to demonstrate [his] assigned error through an argument that is supported by citations to legal authority and facts in the record." State v. Taylor (Feb. 9, 1999), 9th Dist. No. 2783-M, at *3. "[F]ailure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal."Kremer v. Cox (1996), 114 Ohio App.3d 41, 60. As Motley has failed to substantiate this argument, we need not address it. See App. R. 16(A)(7); Loc. R. 7(A)(6).
 {¶ 29} We find that the officers correctly determined that they had probable cause to investigate Motley's residence and that exigent circumstances necessitated their entrance into Motley's residence. Motley's sole assignment of error is overruled.
 III. {¶ 30} Motley's assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
 The Court finds that there were reasonable grounds for this appeal. *Page 12 
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
SLABY, J. CONCURS