DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Defendant-Appellant, Joshua Scott, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.
 I {¶ 2} On December 14, 2006, a Lorain County grand jury indicted Scott on the following charges: possession of cocaine in violation of R.C. 2925.11(A), a second-degree felony; possession of drug abuse paraphernalia in violation of R.C. 2925.14(C)(1), a fourth-degree misdemeanor; tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony; obstructing official business in violation of R.C. 2921.31(A), a fifth-degree felony; and illegal conveyance of drugs onto the grounds of a detention facility in violation of R.C. 2921.36(A)(2), a third-degree felony. Scott pled not guilty and subsequently moved to suppress the evidence that served as the basis for *Page 2 
his charges. The court held a hearing on Scott's motion and Officer Walker testified to the following facts related to the pending charges against Scott.
 {¶ 3} On October 6, 2006, Elyria police were dispatched to a "large disturbance" in the back yard of a residence on Seventh Street, in the south central side of Elyria, Ohio. Officer Walker frequently patrolled the area because it was a high crime area where a significant number of assault and drug arrests occurred. Officer Walker arrived in uniform in a marked car shortly after another officer, Officer Merrill. The officers found approximately 20 men in the back yard "squared off in fighting stance." Both officers directed the men to disperse. Some of the men complied, but others remained "nose to knees, squared off, yelling, [and] screaming back and forth with each other." Officer Walker noticed Scott walking away from the crowd and heading to the back of the yard toward a wooden privacy fence. Officer Walker then saw Scott's "left arm go flying up in the air." Officer Walker testified that he was "no more than ten" feet away from Scott when he saw "an item come out that [he] recognized [as] consistent with a bag of crack cocaine, and it was thrown up to the roof of the garage" next door. Scott immediately "glance[d] back and look[ed] at [Officer Walker], and then start[ed] walking south along the fence, kind of meandering in with the rest of the crowd[.]"
 {¶ 4} Because additional officers had not yet arrived to assist Officers Walker and Merrill, Officer Walker could not safely approach Scott, but he did continue to monitor Scott's actions. The officers continued to order the men to disperse and directed them to line up against the fence to allow the officers to sort through the nature of the disturbance and determine "if anyone was going to be arrested" based on the disturbance. *Page 3 
 {¶ 5} Scott continued walking away from Officer Walker, but Officer Walker began making his way toward Scott so that he could approach him once backup officers arrived. Once Officer Walker heard additional officers nearing, he "[took] hold of [Scott] from behind, put him up against the wood fence[,] [a]nd right away [Scott] said, I didn't do anything." Officer Walker then "real calmly, quietly whispered to him *** `I saw you throw that bag of crack up on the garage.'" Scott began struggling with Officer Walker, so Officer Walker leaned into Scott to hold him against the fence. Officer Walker did not handcuff Scott at that point because he and Officer Merrill remained the only two officers on the scene. Once additional officers arrived in the back yard and more of the men dispersed, Officer Walker handcuffed Scott. He then turned Scott over to Officer Wade who escorted Scott out of the back yard. Officer Walker then climbed the fence and went up onto the roof of the neighboring garage where he found a "single white clear plastic baggy, right in the area where [he] saw Mr. Scott throw the item." Officer Wade then turned Scott over to two other officers who transported him to the police station. By the time Officer Walker arrived at the police station, two other bags of crack cocaine had been found on Scott.
 {¶ 6} Based on Officer Walker's testimony, the trial court denied Scott's motion to suppress. The trial court concluded, based on the evidence presented, that Scott was not under arrest because Officer Walker's testimony did not reveal that he had formed the intent to arrest Scott. Rather, the trial court held that Officer Walker had reasonable suspicion to believe that Scott was involved in criminal activity, sufficient to permit Scott to be lawfully detained while Officer Walker investigated the contents of the baggy Scott *Page 4 
discarded on the neighboring garage. The trial court further concluded that Scott lacked standing to object to the seizure of the first baggy of crack because he had abandoned it when he threw it on top of the neighboring roof.
 {¶ 7} Scott ultimately pled no contest to the charges. The trial court found Scott guilty of all charges and sentenced him to two years incarceration. Scott's appeal was timely filed and he asserts one assignment of error for our review.
 Assignment of Error "THE TRIAL COURT ERRED IN OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS, THEREBY VIOLATING HIS RIGHT TO BE SECURE FROM AN UNREASONABLE SEARCH AND SEIZURE UNDER THE FOURTH
AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 14 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 8} In his sole assignment of error, Scott argues that police unlawfully arrested him because they lacked probable cause. He further asserts that the trial court erred because it was unable to conclude that Officer Walker ever intended to arrest Scott or that he had probable cause to do so, and therefore, its decision to resolve this issue against Scott and in favor of the State was erroneous. Accordingly, he asserts that all evidence seized from him during the unlawful arrest must be suppressed. Scott further argues that the State failed to establish a factual and legal basis for the seizure of two bags of crack cocaine found on him following his unlawful arrest. He asserts that the State failed to satisfy its burden of proof in terms of validating the warrantless search where the officers discovered the second and third bags of cocaine found on Scott. We disagree, but for reasons other than those articulated by the trial court. *Page 5 
 {¶ 9} When ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. Accordingly, this Court's review of a denial of a motion to suppress involves both questions of law and fact. State v.Long (1998), 127 Ohio App.3d 328, 332. As the trier of fact during the suppression hearing, the trial court is best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v.Fry, 9th Dist. No. 23211, 2007-Ohio-3240, at ¶ 8. We accept the trial court's factual findings so long as they are supported by competent, credible evidence. Id. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v.Motley, 9th Dist. No. 24182, 2008-Ohio-6937, at ¶ 13.
 {¶ 10} For a search or seizure to be reasonable under theFourth Amendment, it must be based upon probable cause and executed pursuant to a warrant, unless an exception to the warrant requirement applies.Katz v. United States (1967), 389 U.S. 347, 357. The Ohio Supreme Court has explicitly recognized seven exceptions to the warrant requirement for a reasonable search. State v. Akron Airport Post No. 8975, Veteransof Foreign Wars of U.S. (1985), 19 Ohio St.3d 49, 51; Stone v. Stow
(1992), 64 Ohio St.3d 156, syllabus. Those exceptions are:
 "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; *** (f) the plain view doctrine[;] or (g) an administrative search[.]" (Quotations and citations omitted.) State v. Price (1999), 134 Ohio App.3d 464, 467.
 {¶ 11} Probable cause for an arrest exists where at the moment of the arrest, from the information known to the arresting officers based on reasonably trustworthy *Page 6 
information, a reasonably prudent person would be warranted in believing that the arrestee had committed or was committing an offense. Beck v.Ohio (1964), 379 U.S. 89, 91. "[P]robable cause does not require a prima facie showing of criminal activity; rather, the standard requires only a showing that a probability of criminal activity exists. Moreover, in analyzing whether officers had probable cause to proceed, reviewing courts will look to the totality of all the facts and circumstances as they existed at the time of the incident." (Internal quotations and citations omitted.) Motley at ¶ 17. "Factors to be considered include an officer's observation of some criminal behavior by the defendant, furtive or suspicious behavior, flight, events escalating reasonable suspicion into probable cause, association with criminal and locations."State v. Petty, 5th Dist. No. 2007CA00050, 2008-Ohio-5962, at ¶ 30. An arresting officer's subjective intentions are irrelevant to determining the existence of probable cause. Devenpeck v. Alford (2004)543 U.S. 146, 153.
 {¶ 12} The trial court concluded that Scott was not under arrest, specifically noting that there was insufficient evidence to determine whether or not Scott was under arrest because it was not clear whether Officer Walker "had an intent to arrest." We disagree with the court's legal conclusion based on the factual findings contained in the record.
 {¶ 13} Officer Walker testified that he had made "hundreds" of drug arrests over his 15-year tenure as a police officer. He stated that the area to which he was dispatched was a zone he frequently patrolled and was known "for the high crime *** and drug arrests" that occurred there. He testified that after directing the crowd to disperse, he noticed Scott separating from the crowd and heading toward the side of the yard. He then *Page 7 
saw Scott's "left arm go flying up in the air" and toss an "item *** that [he] recognized [to be] consistent with a bag of crack cocaine." Officer Walker stated that Scott then looked back at him after throwing the item over the fence. Officer Walker testified he was "no more than ten" feet away from Scott when he observed him throw the baggy onto the neighboring garage. He further testified that he "could see an off-colored white substance through the plastic bag" and that "with all the crack arrests [he'd] ever made, most of the time it's in a clear plastic baggy." Officer Walker opined that:
 "[M]ost of the time, the crack is directed in the one corner of a *** baggy *** in the shape of a strawberry[.] *** And then it's tied off in a knot with the top of the baggy either being pulled off or still remaining at the top[.] *** And, when I seen it leave his hand, immediately, that's the first thing that came into my head, that's a bag of crack cocaine."
 {¶ 14} We find this case strikingly similar to the Second District case, State v. Deloach (Aug. 4, 2000), 2d Dist. No. 18071. In that case, three officers were on bicycles when they saw Deloach approach with a baggy in his hand. When they asked him "Hey, what you got?", Deloach ran to the side of a nearby building, while unsuccessfully attempting to throw the baggy in his hand over a fence into the neighboring yard. In affirming the trial court's denial of his motion to suppress, the Court reasoned that:
 "Deloach's problem lies not in his flight but what it revealed. Officer Beall testified that he saw Deloach holding a bag of crack cocaine in his hand as he ran off, attempting to discard the bag as he did. That fact alone created probable cause to arrest Deloach independent of any defects in the detention that Officer Stringer had attempted. The officers were then authorized to seize the crack cocaine, not only incident to their arrest of Deloach on a possession charge but also because Deloach's actions clearly demonstrated that he had abandoned any reasonable expectation of privacy in the bag and its contents. *Page 8 
 "We do not know what features of the bag that he saw Deloach carrying caused Officer Beall to conclude that it contained crack cocaine. He testified that Deloach `was carrying a large bag of crack cocaine in his hand' and that `it looked like crack cocaine in the bag.' He also stated that he was then ten to twelve feet away from Deloach. The trial court appears to have credited this testimony, which went unchallenged, to conclude that the officers had probable cause to arrest Deloach based on what they saw the bag contained. On this record, no other holding is reasonably possible." (Emphasis added and internal citations omitted.) Deloach, at *2.
The court concluded its opinion by noting that "the officers had probable cause to arrest Deloach before they seized the bag because of what they saw the bag held when it was in Deloach's hand." (Emphasis added.) Id., at *3.
 {¶ 15} Here, though not running from the officers, Scott distanced himself from the crowd and tossed the crack-filled baggy onto the neighboring garage. When Officer Walker approached Scott, he claimed he "didn't do anything." Officer Walker then informed him that he saw Scott "throw that bag of crack up on the garage" at which point Scott attempted to wrestle free. Officer Walker then held him against the fence, until backup officers arrived and he could safely handcuff Scott and retrieve the baggy from the garage roof. Given the totality of the facts and circumstances as they existed at the time, we conclude that Officer Walker had probable cause to arrest Scott for possession of cocaine, obstruction of police business, and tampering with evidence based on Scott's conduct.
 {¶ 16} In concluding that Scott was not arrested, but was instead being lawfully detained for further investigation, the trial court noted that there was a "question as to whether [Officer] Walker had an intent to arrest" Scott. We consider Officer Walker's subjective intentions irrelevant because there was evidence to support an objective *Page 9 
finding that probable cause existed to arrest Scott under the circumstances, irrespectively of whether Officer Scott held that same belief. See Devenpeck, supra; State v. Hansard, 4th Dist. No. 07CA3177,2008-Ohio-3349, at ¶ 36 (noting that "a court is not bound by an officer's subjective conclusions concerning the existence of probable cause and may determine that an officer possessed probable cause even if the officer did not believe that the probable cause standard had been satisfied"). Accordingly, we conclude that Scott's arrest was not unlawful and that any evidence obtained beyond that point was the result of a search incident to a lawful arrest. In doing so, we note that:
 "It is well established in Ohio that a reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof. Further, this Court has held that an appellate court shall affirm a trial court's judgment that is legally correct on other grounds, that is, one that achieves the right result for the wrong reason, because such an error is not prejudicial." (Internal citations and quotations omitted.) State v. Danko, 9th Dist. No. 07CA0070-M, 2008-Ohio-2903, at ¶ 40.
The trial court correctly denied Scott's motion to suppress the crack found in the baggy thrown to the roof and the two baggies later found on him by the police. Thus, we affirm the trial court's decision on alternative grounds. See State v. Kelling, 9th Dist. No. 07CA0056-M,2008-Ohio-6935, at ¶ 13-16 (affirming the trial court's denial of a motion to suppress on legal grounds other than the one relied on by the trial court).
 III {¶ 17} Scott's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed. *Page 10 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 DICKINSON, P. J. CARR, J. CONCUR *Page 1