[Cite as *State v. Grant*, 2011-Ohio-6279.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 96586

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DERON GRANT

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-541476

**BEFORE:** Boyle, P.J., S. Gallagher, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**  December 8, 2011

**ATTORNEY FOR APPELLANT**

Jeffrey Froude
Post Office Box 761
Wickliffe, Ohio   44092

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Carl Sullivan
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, P.J.:

{¶ 1}  Defendant-appellant, Deron Grant, appeals his burglary and aggravated theft convictions.   He raises three assignments of error for our review:

{¶ 2}  "[1.] The trial court erred in admitting into evidence the defendant's un-*Mirandized* self-incriminating statement.

{¶ 3} "[2.] The trial court erred in admitting into evidence hearsay evidence of defendant's spontaneous admission.

{¶ 4} "[3.] Defendant received ineffective assistance of counsel by failure of counsel to move to suppress or object to the introduction of a self-incriminating statement made by defendant during interrogation."

{¶ 5} Finding no merit to his appeal, we affirm.

Procedural History and Factual Background

{¶ 6} In September 2010, Grant was indicted on one count of burglary, in violation of R.C. 2911.12(A)(2), and one count of theft, in violation of R.C. 2913.02(A)(1). He and his codefendant, Ezell Grice, were tried together. The following facts were presented to a jury.

{¶ 7} Charawn Thomas testified that on August 27, 2010, she was driving to her house on Louise Harris Drive when she saw two men carrying a large flat screen television on a television stand across the street. She was near her sister's, Erionne Thomas's, house, which was also on Louise Harris Drive. She immediately thought that the television and stand looked like her sister's. She explained that one of the men was bigger and more built and was wearing khaki shorts and a white t-shirt. The other man was smaller and was wearing a white t-shirt and blue jean shorts. She saw the men take the television and stand to a house across the street, but still on Louise Harris Drive.

{¶ 8} Charawn got two friends to help her and they all drove to Erionne's house.

When they got there, Charawn noticed Erionne's home had been broken into, the door had been kicked in, and Erionne's television and stand were missing. She called the police and Erionne.

{¶ 9} Erionne, who was still at another sister's house, came home when Charawn called her. When Erionne arrived home, she realized that her Dell laptop was also missing, and her apartment was "a mess." She explained that she had just recently bought her television, a 42-inch LG flat screen. She had locked it to a television stand, thinking that it might deter thieves from stealing it.

{¶ 10} Charawn led police to where she saw the men take the television, Derrick Smith's apartment. William Cattron and Eric Williams, police officers for Cuyahoga Metropolitan Housing Authority, testified that Smith invited them and other officers into his apartment. In addition to Smith, there were five people in his apartment. Both officers said that the television and stand were in the middle of the apartment, and the laptop was on a table.

{¶ 11} Officer Williams testified that he asked Smith how the television got into his apartment. Smith pointed to Grant. Officer Williams then stated that Grant raised his hand and said, "I did it." At that point, Officer Williams advised Grant of his *Miranda* rights and arrested him.

{¶ 12} Smith also testified that when officers came to his apartment, he told them that

Grant and another man brought the television and laptop into his apartment. Smith further testified that when he told the officers that it was Grant who brought the television to his home, Grant admitted to the officers that he did it.

{¶ 13} The jury found Grant guilty as charged in the indictment. The trial court sentenced him to four years in prison, four years for burglary, and one year for theft, to be served concurrently to one another. The trial court further advised Grant that he would be subject to a mandatory period of three years of postrelease control. It is this judgment from which Grant appeals.

## *Miranda*

{¶ 14} In his first assignment of error, Grant maintains that his confession should be suppressed because the CMHA police officers failed to advise him of his *Miranda* rights before asking questions. See *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. He contends that "because the police entered the living room in force with the intent to make arrests, the circumstances indicate that the freedom of all persons present was restrained to the same degree of formal arrest; and because the implication that no one leaves until we get our men is coercive[,] *Miranda* warnings were required."

{¶ 15} Grant did not file a pretrial motion to suppress his confession. Therefore, pursuant to Crim.R. 12(B)(3), he is precluded from challenging its admission at trial. See also Crim.R. 12(G). A motion to suppress is the proper vehicle for raising challenges to

exclude evidence that is the product of police conduct that results in a constitutional violation. *State v. French*, 72 Ohio St.3d 446, 1995-Ohio-32, 650 N.E.2d 887. And a failure to timely file a motion to suppress evidence amounts to a waiver of any such issues for purposes of trial. *State v. Wade* (1973), 53 Ohio St.2d 182, 190, 373 N.E.2d 1244.

{¶ 16} But in his third assignment of error, Grant claims his trial counsel was ineffective for failing to move to suppress his confession prior to trial. For this court to determine whether his trial counsel was ineffective for failing to file a motion to suppress, Grant must establish that the motion was meritorious (i.e., counsel's performance was deficient), and that he suffered actual prejudice (i.e., the deficient performance prejudiced the defense). *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (two-prong test); *State v. Gower*, 2d Dist. No. 1616, 2003-Ohio-5403, ¶12 (regarding motion to suppress). Thus, we must determine if a motion to suppress Grant's confession would have been successful.

{¶ 17} In *Miranda*, the United States Supreme Court concluded that in the context of "custodial interrogation" certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination. More specifically, the Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates

the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Those safeguards include the now familiar *Miranda* warnings — namely, that the defendant be informed "he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires" — or their equivalent. Id. at 479.

{¶ 18} *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. at 444. In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave. *Thompson v. Keohane* (1995), 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383. Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry" of whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler* (1983), 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275, quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714.

{¶ 19} In *Rhode Island v. Innis* (1980), 446 U.S. 291, 298, 100 S.Ct. 1682, 64 L.Ed.2d 297, the court undertook to refine the contours of the term "interrogation" in light of the use of the word "questioning" in *Miranda*. The *Innis* court determined that the *Miranda* rules are not so narrow as to apply to only "those police interrogation practices that involve express questioning of a defendant * * *." *Innis* at 298. The *Innis* court read the term "interrogation" more broadly, to also include the more subtle "techniques of persuasion" sometimes employed by police officers that do not rise to the level of express questioning, but which also can be extremely coercive in some situations. Id. at 299-300.

{¶ 20} But, as the *Innis* court emphasized, the *Miranda* rules do not operate to prevent the use as evidence of every statement made by a person in custody: "'Confessions remain a proper force in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege [against compulsory self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.'" Id. at 299-300, quoting *Miranda*, 384 U.S. at 4780. Moreover, the *Innis* court determined that "'[i]nterrogation,' as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself." Id. at 300.

{¶ 21} Here, we find that Grant was neither "in custody" nor "interrogated" within the

meaning of *Miranda*. The record discloses that police knocked on Smith's door; Smith invited them into his apartment; the television was sitting in the middle of the room; Officer Williams asked Smith how it got there; and Smith pointed to Grant, who immediately raised his hand and said that he did it.

{¶ 22} "General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding." *Miranda*, 384 U.S. at 477. Grant was not deprived of his freedom in any way; his movements were not restrained; the police did not exercise their will over him, nor was Grant coerced by the police to make an oral statement. Indeed, the police were not even questioning Grant at all; they had just entered the apartment and asked Smith, the leaseholder, one question. Thus, the record demonstrates that Grant voluntarily confessed to the CMHA officers.

{¶ 23} Having found that Grant's confession was voluntary, we conclude that a motion to suppress the confession would not have been successful. Grant's trial counsel's performance was therefore not deficient.

{¶ 24} Grant's first and third (regarding ineffective assistance of counsel for failing to file a motion to suppress) assignments of error are overruled.

### Hearsay

{¶ 25} In his second assignment of error, Grant argues that the trial court erred by

admitting his confession as it was hearsay evidence, and he further argues in his third assignment of error that his trial counsel was ineffective for failing to object to this purported hearsay evidence.

{¶ 26} Grant claims that since he was the declarant and "unavailable" to testify due to his "Fifth Amendment right to remain silent," Evid.R. 804 is applicable. We disagree. Evid.R. 804 applies to *hearsay*. It establishes exceptions to the hearsay rule when a declarant is unavailable. See Evid.R. 804 ("Hearsay exceptions; declarant unavailable").

{¶ 27} But under Evid.R. 801(D)(2), "[a] statement is not hearsay" if it "is offered against a party and is (a) the party's own statement." Grant's statement to police that he brought the television into Smith's apartment clearly falls squarely under Evid.R. 801(D)(2). *State v. Edwards*, 8th Dist. No. 81351, 2003-Ohio-998, ¶33; *State v. Bellomy*, 2d Dist. No. 21452, 2006-Ohio-7087, ¶19.

{¶ 28} Thus, Grant's second and third (regarding ineffective assistance of counsel for failing to object to hearsay evidence) assignments of error are overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been

affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

SEAN C.   GALLAGHER, J., and
EILEEN A.   GALLAGHER, J., CONCUR