[Cite as *State v. Benton*, 2018-Ohio-1296.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105840**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TYRONE BENTON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611910-A

**BEFORE:** Laster Mays, Kilbane, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** April 5, 2018

-i-

**ATTORNEY FOR APPELLANT**

Ruth R. Fischbein-Cohen
3552 Severn Road, Suite 613
Cleveland, Ohio 44118


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Anne Kiran Mikhaiel
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Tyrone Benton ("Benton") appeals the trial court's decision to deny his motion to suppress evidence, reverse his conviction, and find him not guilty.   We affirm the trial court's decision.

{¶2} Benton was charged with one count of having a weapon while under disability in violation of R.C. 2923.13(A)(2).   He pleaded no contest and was sentenced to a 36-month suspended prison sentence, 12 months of community control sanctions, and to pay a $250 fine along with court costs of $100.

I.   Facts

{¶3} On November 22, 2017, Garfield Heights police officers responded to a dispatched call regarding a shooting and homicide at Skills Barbershop.   Officer Bryan Cwiklinski ("Officer Cwiklinski") testified at the suppression hearing that he arrived at the barbershop as the homicide victim was being taken out of the barbershop into the ambulance.   (Tr. 18.)   Officer Cwiklinski entered the barbershop and observed three males, one of which was Benton.   (Tr. 19.)   After Officer Cwiklinski determined that the barbershop was an active crime scene, he instructed all three men to exit the barbershop.   (Tr. 19.)   Once outside, Officer Cwiklinski spoke to one of the men and patted him down for weapons.   (Tr. 21.)   During this time, Officer Cwiklinski observed Benton leaving the barbershop.   Benton threw a backpack into a vehicle.   (Tr. 21.)

Officer Cwiklinski asked Benton what he threw into the car, and Benton told him it was just books. (Tr. 23.)

{¶4} Officer Cwiklinski informed two detectives that arrived at the scene, Detectives Biegacki and Herron that he saw Benton leave the barbershop and place a backpack into a vehicle. (Tr. 24.) Detective Biegacki testified that when Officer Cwiklinski informed him about the backpack, he was concerned because at that point he "didn't know what it was, could have been evidence; could have been a firearm; could have been anything related to this homicide, we didn't know." (Tr. 47.)

{¶5} Detective Biegacki asked Benton if there was a firearm in the backpack, and Benton answered yes. (Tr. 48.) Detective Biegacki testified, "[d]o you mind if we go into your car and get this weapon, and he was cooperative. And so I had Detective Herron give him a consent form, which he filled out." (Tr. 48-49.)

{¶6} Detective Herron testified that he approached Benton with a consent-to-search form. (Tr. 76.) Detective Herron stated, "[a]t the very bottom of that consent form there is something I read, and I read on every consent, because consents are always challenged. So I read the consent form to him and I reiterate during the consent, if we're executing it, he can stop at any time." (Tr. 76.)

{¶7} After finding a second gun inside another vehicle, and receiving conflicting stories from all men, the police arrested the three men. After obtaining a search warrant, the police searched Benton's vehicle. They found a brown backpack containing a hi-point 9mm pistol and a loaded magazine on the

passenger side of the vehicle seat.

{¶8} Benton testified at the suppression hearing as well. He stated that he initially denied the police requested to search his vehicle but was told that "this is a murder scene now and that we are going to check the car. We are going to get a warrant. We are going to seize the car. We are going to confiscate it and we are going to lock you up if you don't sign this consent form." (Tr. 103.)

{¶9} Benton was arrested and charged with having a weapon while under disability. He filed a motion to suppress the gun evidence. The suppression hearing was heard on April 24, and 26, 2017. Benton's motion to suppress was denied. As a result, Benton filed this appeal and asserts one assignment of error for our review:

> I. The trial court improperly denied the appellant's motion to suppress evidence, in violation of his Fourth and Fifth Amendment Rights of the United States Constitution.

## II. Motion to Suppress

### A. Standard of Review

{¶10} When the appellate court reviews a motion to suppress it presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Dunlap*, 73 Ohio St.3d 308, 314, 652 N.E.2d 988 (1995). A reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *Burnside* at ¶ 8. However, once an appellate

court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *Id.* at ¶ 9. In other words, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Id. State v. Jones*, 8th Dist. Cuyahoga No. 102318, 2015-Ohio-4694, ¶ 26.

**B.     Law and Analysis**

{¶11} In Benton's sole assignment of error, he contends that the trial court erred in improperly denying his motion to suppress the gun evidence.   Specifically, he argues that the police violated his constitutional rights to be protected from unreasonable searches and seizures by the government. Benton contends that the police did not have probable cause to search his car or backpack, and that he was coerced into signing a consent to search.

> The Fourth Amendment to the United States Constitution protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Ohio Constitution, Article I, Section 14, is nearly identical to its federal counterpart. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998).

*State v. Blevins*, 2016-Ohio-2937, 65 N.E.3d 146, ¶ 18 (8th Dist.).

{¶12} There are exceptions to the Fourth Amendment protection against unreasonable searches and seizures.   One of the well-recognized exceptions to the warrant requirement is "[t]he existence of exigent circumstances, coupled with probable cause."   *State v. Harris,* 8th District Cuyahoga No. 84591, 2005-Ohio-399, ¶ 32, citing *Minnesota v. Olson*, 495 U.S. 91, 100,   110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).   The

United States Supreme Court has recognized "four situations which form the appropriate standard for determining the existence of exigent circumstances: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent escape, and (4) the risk of danger to police or others. *State v. Adams*, 7th Dist. Mahoning No. 08 MA 246, 2011-Ohio-5361, ¶ 34." *State v. Thomas*, 10th Dist. Franklin No. 14AP-185, 2015-Ohio-1778, ¶ 15. When the delay associated with obtaining a warrant would result in the concealment or destruction of evidence, the exigent circumstances exception to the Fourth Amendment's warrant requirement may apply. *State v. Johnson*, 187 Ohio App.3d 322, 931 N.E.2d 1162, ¶ 14 ( 2d Dist.), citing *State v. Motley*, 9th Dist. Summit No. 24182, 2008-Ohio-6937. *State v. Schneider*, 8th Dist. Cuyahoga No. 96953, 2012-Ohio-1740, ¶ 18.

{¶13} Generally, under the exigent circumstances exception, there must be "compelling reasons" or "exceptional circumstances" to justify a warrantless search. *McDonald v. United States*, 335 U.S. 451, 454, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The appropriate inquiry is whether, based on the totality of the circumstances, it was reasonable for the officers to believe that an exigent or emergency situation existed. *State v. Applegate*, 68 Ohio St.3d 348, 626 N.E.2d 942 (1994). *State v. Booker*, 8th Dist. Cuyahoga No. 96935, 2012-Ohio-162, ¶ 17.

{¶14} Benton argues that the police did not have probable cause to question him about the backpack because they knew that he was not the shooter. "[T]he standard for finding probable cause does not require a prima facie showing of criminal activity, but

only the probability of criminal activity." *State v. Weimer*, 8th Dist. Cuyahoga No. 92094, 2009-Ohio-4983, ¶ 29. In this case, the police were in the barbershop and observed shell casings from a firearm on the ground, bullet holes, and a deceased victim being removed from the crime scene. Officer Cwiklinski asked the barbers to wait in the parking lot because it was an active crime scene. As Officer Cwiklinski spoke with the owner, he observed Benton leaving the barbershop, where a homicide had just occurred, with a backpack and throwing the backpack into a vehicle.

{¶15} At the time Officer Cwiklinski observed Benton, he was not aware who committed the homicide or even the full facts surrounding the homicide. Reviewing the totality of the circumstances, there was probable cause to reasonably suspect that Benton was removing evidence from the crime scene.

*See State v. Moore*, 90 Ohio St.3d 47, 51-52, 734 N.E.2d 804 (2000) (finding search of a defendant's person was justified where the officer smelled a strong odor of burnt marijuana emanating from the vehicle and on the defendant); *State v. Douglas*, 3d Dist. Marion No. 9-13-07, 2013-Ohio-4563. Under the exigent circumstances exception, "[b]ecause marijuana and other narcotics are easily and quickly hidden or destroyed, a warrantless search [of an individual's person] may be justified to preserve evidence. * * *." *Moore* at 52. *State v. Jones*, 8th Dist. Cuyahoga No. 100300, 2014-Ohio-2763, ¶ 27. Because a weapon could be easily hidden, the Garfield Heights police searched Benton in an effort to preserve evidence.

{¶16} After being questioned a second time, Benton acknowledged that he had a

gun in the backpack and signed a consent- to-search form. Benton argues that he was coerced into signing the consent-to-search form because the police stated that they could arrest him and impound the vehicle. Benton argues that this is a violation of his Fifth Amendment rights.

> The Fifth Amendment to the Constitution of the United States provides that no person "shall be compelled in any criminal case to be a witness against himself." This Amendment is made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).

*State v. McMiller*, 8th Dist. Cuyahoga No. 103962, 2016-Ohio-5844, ¶ 41.

**{¶17}** Benton contends that because the police questioned him about the backpack, they were conducting an interrogation.

> In interpreting the Fifth Amendment, the United States Supreme Court has found that criminal suspects in the custody of the police enjoy certain rights during interrogation. *Miranda v. Arizona*, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). These rights include the right to remain silent and the right to have counsel present during the interrogation. *Id.* at 467-468. "Once an accused invokes his right to counsel, all further custodial interrogation must cease and may not be resumed in the absence of counsel unless the accused thereafter effects a valid waiver or himself renews communication with the police." *State v. Knuckles*, 65 Ohio St.3d 494, 605 N.E.2d 54 (1992), paragraph one of the syllabus, citing *State v. Williams*, 6 Ohio St.3d 281, 6 Ohio B. 345, 452 N.E.2d 1323 (1983).

*Id.* at ¶ 42.

**{¶18}** However, we disagree with Benton's assertion. The record does not support the claim that Garfield Heights police conducted a custodial interrogation of Benton.

> *Miranda* defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise

deprived of his freedom of action in any significant way." *Id*. at 444. In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave. *Thompson v. Keohane*, 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve "the ultimate inquiry" of whether there was a "'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.'" *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

*State v. Grant*, 8th Dist. Cuyahoga No. 96586, 2011-Ohio-6279*, ¶* 18.

**{¶19}** Reviewing the record, Benton was asked to wait in the parking lot while the crime scene was secured. Benton was seen putting his book bag in his vehicle. The Garfield Heights police asked Benton what was in his book bag. Benton never invoked his right to counsel or showed that his restraint on his movement was restricted of the degree associated with a formal arrest. Benton then signed a consent to search. Benton's assertions regarding a police interrogation have no merit.

**{¶20}** Benton's sole assignment of error is overruled.

**{¶21}** The trial court's judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY EILEEN KILBANE, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR