The STATE of Ohio, Appellee

v.

PRICE, Appellant.

[Cite as *State v. Price* (1999), 134 Ohio App.3d 464.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 19394.

Decided Sept. 1, 1999.

*Max Rothal,* Director of Law, *Douglas J. Powley,* Chief City Prosecutor, and *Angelo N. Kanarios,* Assistant City Prosecutor, for appellee.

*Walter J. Vogel,* for appellant.

BAIRD, Presiding Judge.

Michael L. Price was convicted of child endangering, in violation of Lakemore Village Code 636.12(a), and of generating unreasonable noises and loud sounds by the use of amplifying devices, in violation of Section 2(A) of Lakemore Village Codified Ordinance 1171–1992. The trial court overruled Price's pretrial motion to suppress evidence, and the evidence was subsequently presented at his jury trial. Price has appealed the denial of his motion to suppress.

Price has asserted that the trial court erred when it refused to suppress the evidence obtained by the police when they entered his residence without a warrant or his consent. We sustain his assignment of error.

I

While on patrol at 10:45 p.m. on March 27, 1998, Lakemore Village Police Officer Russell Morgan noticed loud music emanating from Price's residence. He could hear the music from between two and three hundred feet away. Officer Morgan knocked on the door several times, including during pauses in the music, and yelled through the window, but did not get a response. He returned to the police department to check the village noise ordinance. The ordinance prohibits amplification of noise in residential areas in a manner that can be heard more than eighty feet from the property line between nine in the evening and eight the next morning. Section 2(A), Lakemore Village Codified Ordinance 1171–1992. Violation of the municipal ordinance is a minor misdemeanor. Section 5, Lakemore Village Codified Ordinance 1171–1992.

Approximately ten minutes later, after checking the ordinance, Officer Morgan returned to Price's residence with Officer Ronald See. The two knocked simultaneously on the front and rear doors. There was no response to their knocking. Officer See noticed that the back door was open, and the screen door unlocked and slightly ajar. The officers entered the residence, announcing "police department." The trial court determined that the police entered "to both ensure the safety and well-being of the residents as well as abate a continuing nuisance."

Price did not consent to the officers' entry into the home, nor did the officers have a warrant. Although the residents of the other half of the duplex were aware of the noise, they had not complained about it. Even when the officers brought the noise to the attention of these neighbors, the testimony of the officers does not indicate that the neighbors were concerned about it.

Once inside, the police discovered Price smelling of alcohol and sleeping in a chair with an infant asleep in the crook of each arm. This discovery formed the basis of the child-endangering charge for which he was convicted.

## II

In the absence of a warrant or consent, the entrance of a police officer into a private home is " 'presumptively unreasonable.' " *United States v. Rohrig* (C.A.6, 1996), 98 F.3d 1506, 1515, quoting *Payton v. New York* (1980), 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651. Searches conducted outside the judicial process, without prior approval by judge or magistrate, are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585, fn. 19. Because of this, the state bears the burden of establishing the validity of the search that was undertaken in the absence of a warrant or consent. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 376–377, 373 N.E.2d 1252, 1255–1256. If the search is constitutionally invalid, the evidence obtained in a search must usually be suppressed. See *Mapp v. Ohio* (1961), 367 U.S. 643, 654–655, 81 S.Ct. 1684, 1691–1692, 6 L.Ed.2d 1081, 1089; *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 254–261, 22 OBR 427, 429–436, 490 N.E.2d 1236, 1238–1244.

The Ohio Supreme Court has explicitly recognized seven exceptions to the requirement that a warrant be obtained prior to a search. Those exceptions are "(a) [a] search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine," *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 43, 482 N.E.2d 606, 608, certiorari denied (1986), 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 777; or (g) an "administrative search," *Stone v. Stow* (1992), 64 Ohio St.3d 156, 164, 593 N.E.2d 294, 300, fn. 4. Although there is no precise list of all the exigent circumstances that might justify a warrantless search, exigent circumstances generally must include the necessity for immediate action that will "protect or preserve life or avoid serious injury," *Mincey v. Arizona* (1978), 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300, or will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest, see *Rohrig*, 98 F.3d at 1517–1518.

Price has not challenged the factual determinations made by the trial court. Because of this, we accept the facts found by the trial court as true, without analysis. Taking into account these facts, and other undisputed testimony that does not contradict them, we review *de novo* whether the circumstances of this case justified the warrantless entry, as a matter of law. The trial court determined that the "officer happened upon a residence from which loud music was emanating," and that the music was still "emanating from the residence" a short time later when he returned with another officer. During both visits to the residence, one or both officers knocked and got no response. On the second visit,

the officers entered without a warrant in order to "both ensure the safety and well-being of the residents as well as abate a continuing nuisance." The trial judge determined that *Rohrig* authorized their entrance into Price's home to abate a continuing nuisance.

The state has argued that it was protecting a "compelling governmental interest in peace along with the neighbor's interest in peace and quiet enjoyment" when it entered Price's home without a warrant. The ordinance that Price violated was a minor misdemeanor. The existence of an ordinance supports the assertion that the government has an interest in limiting the amplification of sound. The fact that Lakemore has chosen to classify the offense a minor misdemeanor diminishes the argument that this interest is compelling. See *Welsh v. Wisconsin* (1984), 466 U.S. 740, 753, 104 S.Ct. 2091, 2099–2100, 80 L.Ed.2d 732, 745. Presumably the purpose of the ordinance is to enable the government to fulfill its responsibility to preserve the peace. Here there was no evidence that the noise was disturbing the neighborhood peace. The police noticed the noise during routine patrol. It was not even immediately apparent to the officer that the noise actually violated the ordinance because, according to his testimony, he had to return to the station to check the ordinance. The sole testimony regarding the impact of the noise on the neighbors was in response to a question from the officers as to whether "they had heard this loud music[,]" to which they answered "yes." The government does have an interest in enforcing its laws, even when the violation of the ordinance is a minor misdemeanor and apparently does not concern even those it was intended to protect. That interest is minor, however, in contrast to a man's considerable right to privacy in his own home.

Whether the governmental interest was great enough to support a search warrant is not before us, as one was not issued. Because of this we must consider whether the situation was urgent enough to justify entry without awaiting the assessment of this balance by a neutral magistrate via the warrant process. See *Johnson v. United States* (1948), 333 U.S. 10, 13–14, 68 S.Ct. 367, 368–369, 92 L.Ed. 436, 440. The only offense that was evident before the police entered Price's house was the violation of the noise ordinance. The evidence needed to prosecute Price for violation of the noise ordinance was not of such ephemeral quality that it would have vanished in the time necessary to obtain a warrant. Two police officers witnessed the offense and could testify as to the time of day and distance at which the noise could be heard. The officers learned Price's identity from the next-door neighbors. Those same neighbors could be subpoenaed to testify to both Price's identity and the elements of the offense.

The noise itself, under the facts in this case, created no particular need for an urgent entry. The neighbors were apparently not upset by the noise, and no

evidence was presented that they wanted or expected the police officers to quell the noise immediately. This is in marked contrast to the case cited by the trial court as establishing that abatement of loud music may be an exigent circumstance. In *Rohrig,* police responded to complaints from neighbors that loud music was being played at approximately 1:30 in the morning. *Rohrig,* 98 F.3d at 1509, 1521. When police arrived to investigate they could hear the music from at least a block away. *Id.* at 1521. They were greeted by an "irate group" of as many as eight pajama-clad neighbors demanding an end to the noise. *Id.* at 1509, 1521. The *Rohrig* court called the racket a "highly intrusive breach of a neighborhood's peace in the middle of the night," and further described it as a "continuing and noxious disturbance." *Id.* at 1519, 1522. In contrast, here a passing officer noticed loud music while on routine patrol; the only neighbors who were mentioned during testimony were apparently unconcerned about the noise. There was a far greater need for urgency in *Rohrig,* when several irate neighbors, obviously unable to sleep, took the initiative to summon police to the scene in order to obtain relief from their neighbor's loud music, than in this case. Even if *Rohrig* stands for the proposition that noise abatement may present exigent circumstances sufficient to justify a warrantless entry, those circumstances are not present here.

The trial court mentioned the officer's concern for the safety of the occupants but ultimately decided the motion solely on the basis of noise abatement. We presume that it determined that safety concerns were not sufficient to justify a warrantless entry, and concur. From the exterior of the house, there was no indication that anyone inside was in, or posed an, immediate danger of serious injury or death. There was no evidence presented that relatives, neighbors, or anyone else expressed concern to the police that something out of the ordinary and potentially dangerous was occurring in Price's house. In fact, the officer initially on the scene left for approximately ten minutes, not to obtain help for the occupants, but to check the noise ordinance. Loud music, in and of itself, does not indicate the kind of immediate physical danger that justifies entry into a private home without a warrant.

The error assigned by Price is sustained.

### III

Because the state failed to establish that its nonconsensual and warrantless entry into Price's home was justified by an exception to the warrant requirement, the evidence obtained after police entered Price's home should have been

suppressed. We reverse the judgment of the court and remand the cause for further proceedings consistent with this order.

*Judgment reversed*
*and cause remanded.*

WHITMORE and BATCHELDER, JJ., concur.