[Cite as *State v. Sturgill*, 2022-Ohio-4574.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 22-COA-011 |
| VERONICA STURGILL | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS:     Appeal from the Ashland County Court of
                              Common Pleas, Case No. 21-CRI-041

JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       December 16, 2022

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

CHRISTOPHER R. TUNNELL, ESQ.          JUSTIN WEATHERLY, ESQ.
Ashland County Prosecuting Attorney   Henderson, Mokhtari, & Weatherly
                                      1231 Superior Avenue East
NADINE HAUPTMAN, ESQ.                 Cleveland, Ohio 44114
Assistant Prosecuting Attorney
110 Cottage Street – Third Floor
Ashland, Ohio 44805

*Hoffman, J.*

{¶1} Defendant-appellant Veronica Sturgill appeals the judgment entered by the Ashland County Common Pleas Court convicting her following her pleas of no contest to possession of cocaine (R.C. 2925.11(A),(C)(4)(d)), corrupting another with drugs (R.C. 2925.02(A)(4)(a), (C)(3)(a)), and trafficking in marijuana (R.C. 2925.03(C)(3)(a),(b)), and sentencing her to an aggregate prison term of two to three years. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On June 18, 2020, Officer Leah Zeisler of the Ashland Police Department saw a group of girls walking in a Taco Bell parking lot after the City of Ashland's juvenile curfew of midnight. Two of the girls were Appellant's minor daughters. When Ofcr. Zeisler took the girls home to Appellant's apartment, she noted a strong odor of marijuana in the home, and observed marijuana and assorted drug paraphernalia in Appellant's living room. Appellant admitted to Ofcr. Zeisler she smoked marijuana, and her minor daughters also smoked marijuana. The officer contacted Ashland County Children's Services, and a safety plan was put into place.

{¶3} On March 3, 2021, Ashland Police received a complaint of marijuana smoke emanating from Appellant's apartment, and wafting into nearby apartments. Officer Geisler responded, along with Officer Kyle Dress and Officer Lee Eggeman. Although one of Appellant's daughters was 18 years old at this time, the younger daughter was 12 years old. While en route to Appellant's home, Ofcr. Zeisler briefed Ofcr. Dress concerning the incident in June of 2020.

{¶4} As the officers approached Appellant's apartment, they noted a heavy odor of marijuana. Ofcr. Dress knocked on the door. Although officers could hear people

scurrying inside and saw the door handle turn to open before closing again, no one came to the door. After several minutes of knocking, Appellant appeared, opened the front door, and stepped outside to the stoop, quickly closing the door behind her.

**{¶5}** Ofcr. Dress asked Appellant why it took so long to answer the door. Appellant replied she did not hear him knock because she was upstairs listening to music. He advised her as to why the officers were there, noting they could smell marijuana coming from the house, which Appellant denied. Officer Dress next asked Appellant if there were children inside the house. Appellant confirmed her two children were in the house, as well as a juvenile friend of her daughters from school.

**{¶6}** Ofcr. Dress told Appellant they would like to check the house. Appellant responded they could not come in the house without a warrant. Ofcr. Dress asked Appellant if she wanted Children's Services involved. A conversation ensued, in which Appellant asked Ofcr. Dress what he wanted to do. He stated he wanted to go inside. Appellant paused, then said "Okay." Supp. Tr. 31. Once inside the residence, police found marijuana, drug paraphernalia, and cocaine.[1]

**{¶7}** Appellant was indicted by the Ashland County Grand Jury with possession of cocaine, corrupting another with drugs, and trafficking in marijuana.

**{¶8}** Appellant filed a motion to suppress evidence taken from her home. The trial court overruled the motion, finding exigent circumstances existed for the warrantless entry to the home, and further found Appellant consented to the entry.

---

[1] While the State's brief cites extensively to State's Exhibit 1, Officer Dress's body camera video, for facts surrounding the search of the house, it appears from the transcript of the proceedings only 3 minutes and 30 seconds of the video was played at the suppression hearing, stopping at the point where the officers entered the apartment. We further note State's Exhibit 1 as provided to this Court includes only audio from the body camera video, and does not include video imaging.

**{¶9}** Appellant thereafter entered pleas of no contest to all charges, and was convicted. The trial court sentenced Appellant to two to three years incarceration for possession of cocaine, fifteen months incarceration for corrupting another with drugs, and six months incarceration for trafficking in marijuana, to be served concurrently for an aggregate term of incarceration of two to three years. It is from the March 22, 2022 judgment of the trial court Appellant prosecutes her appeal, assigning as error:

THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS WHEN IT FOUND THAT THE SEARCH OF APPELLANT'S HOME WAS PREDICATED ON PROBABLE CAUSE AND WAS THE RESULT OF VOLUNTARY CONSENT.

**{¶10}** In her sole assignment of error, Appellant argues the trial court erred in overruling her motion to suppress. She first argues the coercive tactics used by the police at her door amounted to a warrantless arrest, and the statements she made to the officers were therefore a product of a custodial interrogation.[2] She also argues her consent to the officers' entry was not voluntary, and the entry and search was not based on exigent circumstances.

**{¶11}** Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When ruling on a motion to suppress, the trial court assumes the role of trier of

---

[2] Although raised in her motion to suppress in the trial court, they were not the focus of the suppression hearing, and the trial court did not address these arguments in its judgment. The suppression hearing and subsequent judgment entry focused solely on the issues of exigent circumstances and consent for the warrantless entry into Appellant's apartment.

fact and is in the best position to resolve questions of fact and to evaluate witness credibility. *See State v. Dunlap,* 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings. *See Burnside, supra; Dunlap, supra; State v. Long,* 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996). However, once this Court has accepted those facts as true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas, supra.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

{¶12} "[T]he weight of the evidence and credibility of witnesses are primarily for the trier of the facts. * * * This principle is applicable to suppression hearings as well as trials." *State v. Fanning*, 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583(1982). *Accord State v. DeHass*, 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972(1992).

{¶13} Appellant first argues she was arrested without probable cause when she answered the door, as she was confronted with three armed police officers, interrogated immediately, and not free to leave.

{¶14} The existence of an arrest is dependent the existence of four requisite elements: (1) An intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested. *State v. Barker*, 53 Ohio St.2d 135, 372 N.E.2d 1324, 1326–27 (1978).

{¶15} The record does not support Appellant's contention she was under arrest when she answered the door. While police questioned her about the marijuana complaint, they did not indicate any intent to arrest Appellant. Although she argues the officers were armed, the record does not reflect the officers brandished weapons or otherwise indicated an intent to restrain her movement. We find from the record before this Court the conduct of the officers did not prohibit Appellant from going back inside the house, or from staying inside the house in the first instance when police came to the door.

{¶16} Appellant similarly argues she was "in custody" from the moment she answered the door, and officers failed to Mirandize her. A duty to administer Miranda warnings arises only when an accused is taken into custody. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). For purposes of Miranda warnings, "custody" is defined as a formal arrest or restraint on the freedom of movement to the degree associated with a formal arrest. *State v. Mason,* 82 Ohio St.3d 144, 154, 694 N.E.2d 932 (1998). In order to determine whether a person was in custody, the court should apply a totality-of-circumstances test, including where the interrogation occurred, whether the investigation had focused on the subject, whether the objective indicia of arrest were present, and the length of the questioning involved. *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994).

**{¶17}** We find Appellant was not in custody when questioned by the officers at her front door. She voluntarily answered the door. There was no evidence the officers attempted to restrain her movement in any way, nor was there evidence they prevented her from going back inside the house.

**{¶18}** Appellant next argues the trial court erred in finding the warrantless entry and search of her house was justified by exigent circumstances.

**{¶19}** "The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures." *State v. Moore*, 2d Dist. No. 20198, 2004-Ohio-3783, at ¶ 10. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable*." Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Indeed, the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed * * *." *United States v. United States Dist. Ct*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). However, warrantless searches and seizures are not in violation of the Fourth Amendment when such falls within one of the few specifically established and well delineated exceptions.

**{¶20}** One such exception is an entry or search based on exigent circumstances. The exigent circumstances exception relies on the premise the existence of an emergency situation, demanding urgent police action, may excuse the failure to procure a search warrant. *See Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Although there is no precise list of all the exigent circumstances which might justify a warrantless search, exigent circumstances generally must include the necessity

for immediate action which will " 'protect or preserve life or avoid serious injury'," or will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest. *State v. Price*, 134 Ohio App.3d 464, 467, 731 N.E.2d 280, (1999), *quoting Mincey v. Arizona*, 437 U.S. 385, 392-93, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978).

{¶21} While the emergency aid exception does not require probable cause, officers must have reasonable grounds to believe there is an immediate need to act in order to protect lives or property, and there must be some reasonable basis for associating an emergency with the location*. State v. Bubenchick*, 5th Dist. Stark No. 2014CA00020, 2014-Ohio-5056, 2014 WL 6066188, ¶ 14 *citing State v. Gooden*, 9th Dist. Summit No. 23764, 2008-Ohio-178, 2008 WL 186646, ¶ 10.  In their community caretaking roles, officers may intrude on a person's privacy to carry out community-caretaking functions to enhance public safety. *State v. Stanberry,* 11 th Dist. Lake No. 2002-L-028, 2003-Ohio-5700, 2003 WL 22427922, ¶ 23, *citing State v. Norman*, 136 Ohio App.3d 46, 54, 735 N.E.2d 953 (1999). "The key to such permissible police action, is the reasonableness required by the Fourth Amendment." *Stanberry* at ¶ 23.

{¶22} In the instant case, police were greeted at Appellant's door with a very strong odor of burning marijuana.  Appellant confirmed her two daughters, one of whom was a minor, were inside the home, along with a friend who was also a minor.  Police were aware from past experience with Appellant she allowed her minor children to smoke marijuana in her home.  Further, police had previously encountered Appellant's minor daughters outside alone late at night, after the city's curfew.  When the children were returned to Appellant's home on the prior occasion, Ofcr. Zeisler similarly encountered an odor of marijuana coming from Appellant's home.  We find the governmental interest in

protecting children as part of its caretaking function to enhance public safety justifies the warrantless entry in this case. The children inside Appellant's home were exposed to a potentially hazardous situation where illegal use of marijuana by minors was tolerated – all while the children were under the supervision of Appellant who apparently had been using marijuana herself. Exigent circumstances existed in this case.

**{¶23}** Appellant also argues the trial court erred in finding she gave consent to enter and search the apartment. She argues her consent was involuntary, as it was coerced by Ofcr. Dress's threat to contact Children's Protective Services.

**{¶24}** "The following factors are generally used in Ohio to decide if a defendant's consent to search has been given voluntarily: '(1) whether the defendant's custodial status was voluntary; (2) whether coercive police procedures were used; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his or her right to refuse consent; (5) the defendant's education and intelligence; [and] (6) the defendant's belief that no incriminating evidence will be found.' " *State v. Gomez,* 5th Dist. No. CT2018-0025, 2019-Ohio-481, 130 N.E.3d 1065, ¶ 46, *quoting State v. Mabry*, 2d Dist. Montgomery No. 26242, 2015-Ohio-4513, 2015 WL 6592460, ¶ 15.

**{¶25}** After Ofcr. Dress asked to come inside and search the house, Appellant initially responded police would have to get a warrant. Making an apparent reference to Ofcr. Zeisler's involvement in the past incident, Appellant stated she was not doing this again. At this point, Ofcr. Dress stated, "So you want Children's Services involved?" State's Ex. 1. Appellant responded she did not, and Ofcr. Dress noted she had contact before with both Children's Services and the police. Appellant again asked what Ofcr. Dress wanted to do, and he stated he wanted to go inside to see if anything else was

inside. Appellant at this point allowed the officers to enter, after a brief discussion about how many of the officers needed to come inside.

**{¶26}** Appellant testified at the suppression hearing she felt the officer was threatening to call Children's Services if she didn't consent to the search, and further she could avoid the involvement of Children's Services by consenting to the search. Supp. Tr. 48.

**{¶27}** The trial court found as follows:

> While Officer Dress asked Defendant if she wanted the officers to involve Children's Services (by implication drawing Defendant's attention to the prior removal of her minor children), there was no threat of imminent removal of the children. Officer Dress had no information which would have justified any conclusion that Defendant's current situation would ultimately require Children's Services involvement, but the statement reflects the Officer's concern for the health and safety of Defendant's minor child who was present in the residence. The Court does not find this statement to constitute undue coercion.

**{¶28}** Judgment Entry, March 30, 2022.

**{¶29}** We find the trial court did not err in finding the reference to calling Children's Services did not render Appellant's consent involuntary. The first implication to the past incident involving the police and Children's Services was made by Appellant when she stated she wasn't doing this again. Appellant did not immediately respond after the officer

asked if she wanted Children's Services involved, but paused, thought about her decision, and asked again what the officer wanted to do.  Appellant clearly understood she had the right to refuse entry, as she initially told police they would need to get a warrant.  Further, the trial court was in a better position than this Court to judge the credibility of Appellant's testimony she believed allowing the officers to search was the only way to avoid involvement by Children's Services.

{¶30} As noted by the trial court, there "appears to be no issue as to the consensual nature of the subsequent searches" after the initial entry of the apartment.

{¶31}  The assignment of error is overruled.  The judgment of the Ashland County Common Pleas Court is affirmed.


By: Hoffman, J.
Gwin, P.J.  and
Delaney, J. concur