[Cite as *State v. Reynolds*, 2025-Ohio-4490.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | Case No. 2025-CA-0053 |
| Plaintiff - Appellant | <u>Opinion And Judgment Entry</u> |
| -vs- | Appeal from the Richland County Court of Common Pleas, Case No. 2023-CR-0597R |
| JAIDEN REYNOLDS | |
| Defendant – Appellee | Judgment:   Affirmed |
| | Date of Judgment Entry: September 26, 2025 |

**BEFORE:** WILLIAM B. HOFFMAN, P.J.,; ROBERT G. MONTGOMERY, J.; KEVIN W. POPHAM, J., Appellate Judges

**APPEARANCES:** JODIE M. SCHUMACHER BY: MEGAN HOBART, for Plaintiff-Appellee; JOSEPH C. PATITUCE & CATHERINE R. MEEHAN, for Defendant-Appellant.

OPINION

*Popham, J.*

{¶1}   In his direct appeal, Defendant-Appellee Jaiden Reynolds ("Reynolds") challenged the trial court's denial of his motion to suppress.  The trial court denied the motion, concluding Reynolds lacked standing to challenge the search of the residence at 19 Dunbilt Court.

{¶2}   On appeal this Court reversed and remanded, holding that the State had waived the issue of standing by failing to raise it, and directing the trial court to determine whether exigent circumstances justified the entry. *State v. Reynolds*, 2025-Ohio-2347, ¶ 29 (5th Dist.) ("*Reynolds I*").

{¶3} On remand, the trial court issued a judgment entry on July 25, 2025, granting Reynolds's motion to suppress. The court reasoned:

> When looking at the totality of the circumstances, the Court finds that exigent circumstances did not exist at the time Mansfield Police entered 19 Dunbilt Court. Police had been on the scene for over an hour. No objective information was present at the time of entry to believe that someone was inside who needed immediate aid to preserve life. As such, the search was unreasonable under the circumstances.

{¶4} The State of Ohio now appeals from that judgment.

*Facts and Procedural History*

{¶5} The essential facts are set forth in *Reynolds I* and are summarized here for context.

{¶6} On April 20, 2023, Mansfield police officers responded to a ShotSpotter alert of possible gunfire near 19 Dunbilt Court ("the Residence"). Officer Eric Schaaf testified that the technology provides only a general location and often requires "guesses about the locations." Supp. T. at 45. Multiple 9-1-1 calls also reported gunfire in the vicinity. *Id.*

{¶7} Upon arrival, Schaaf observed a white Chevrolet Malibu backing out of the Residence's driveway. Shortly thereafter, individuals at 9 Dunbilt Court flagged down Schaaf and reported someone on the ground behind 8 Dunbilt Court. Schaaf discovered an unresponsive male with apparent gunshot wounds and rendered aid until paramedics arrived. The victim later died.

{¶8} Schaaf then secured the scene and began surveillance. Supp. T. at 22, 24. While doing so, he observed a truck with bullet damage near 8 Dunbilt Court and a shell

casing on the porch of the Residence. Additional shell casings were scattered throughout the area. Supp. T. at 51-53.  Schaaf also testified that someone at the scene reported individuals running in and out of the Residence, though he could not recall the source. *Id.* at 28.

{¶9}  Despite these observations, officers did not immediately enter the Residence. As this Court previously noted, the scene was chaotic, and law enforcement was limited.  *Reynolds I* at ¶ 6.  While monitoring the Residence, Schaaf and another officer heard what sounded like a television or stereo inside and observed movement of window curtains. Supp. T. at 31.  Even so, more than an hour passed before officers entered the Residence.  *Id.*  At that point, there were no visible bullet holes or blood on the exterior of the Residence.  *Id.* at 53-54.  The State stipulated that no bullet damage existed on the exterior of the Residence.  *Id.* at 57.  Schaaf also denied hearing calls for help from within and could not recall whether officers knocked and announced their presence before entering.  *Id.* at 54, 57.

{¶10}  Upon entry, officers observed a firearm near the front door but found no injured persons. Supp. T. at 63.  During a protective sweep, they discovered suspected narcotics, drug paraphernalia, and another firearm upstairs.  No individuals were located inside the Residence.

{¶11}  Based on the observations following entry into the Residence, officers obtained and executed a search warrant identifying Reynolds as a resident.

{¶12}  On August 11, 2023, Reynolds was indicted on three counts: (1) Aggravated Trafficking in Drugs, R.C. 2925.03(A)(2)/(C)(1)(e), a first-degree felony; (2) Aggravated

Possession of Drugs, R.C. 2925.11(A)/(C)(1)(d), a first-degree felony; and (3) Participating in a Criminal Gang, R.C. 2923.42(A)/(B), a second-degree felony.

{¶13} Reynolds filed a motion to suppress, arguing that the entry violated the Fourth Amendment. The trial court denied the motion, concluding Reynolds lacked standing. On appeal, this Court reversed, holding that the State had waived the issue of standing by failing to raise it, and remanded the case to the trial court for a determination of whether exigent circumstances justified the entry. *Reynolds I* at ¶ 29.

{¶14} On remand, the trial court framed the sole issue as whether exigent circumstances justified the entry. Relying on *State v. Applegate*, 68 Ohio St.3d 348 (1994); *Mincey v. Arizona*, 437 U.S. 385, 392-393 (1978); and *State v. Hodge*, 2011-Ohio-633 (2d Dist.), the trial court applied the objective totality-of-the-circumstances test. The court concluded that the circumstances did not support an exigency and granted Reynolds' motion to suppress.

*Assignments of Error*

{¶15} The State presents two assignments of error:

{¶16} "I. THE JUDGMENT ENTRY GRANTING DEFENDANT'S MOTION TO SUPPRESS DID NOT INCLUDE SUFFICIENT FINDINGS OF FACT."

{¶17} "II. THE TRIAL COURT'S FINDINGS OF FACT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**State's Appeal**

{¶18} As an initial matter, we must review whether the State followed the appropriate procedure for a prosecutor's appeal from an order granting a motion to suppress evidence. A court of appeals has jurisdiction to entertain the State's appeal

from a trial court's decision to suppress evidence only where the State has complied with Crim.R. 12(K). *State v. Perez,* 2005-Ohio-1326, ¶ 12 (1st Dist.), citing *State v. Buckingham*, 62 Ohio St.2d 14 (1980), syllabus (interpreting former Crim.R. 12(J)).

{¶19} Crim.R. 12(K) states in pertinent part:

When the state takes an appeal as provided by law from an order suppressing or excluding evidence, the prosecuting attorney shall certify that both of the following apply:

(1) The appeal is not taken for the purpose of delay;

(2) The ruling on the motion or motions has rendered the state's proof with respect to the pending charge so weak in its entirety that any reasonable possibility of effective prosecution has been destroyed.

The appeal from an order suppressing or excluding evidence shall not be allowed unless the notice of appeal and the certification by the prosecuting attorney are filed with the clerk of the trial court within seven days after the date of the entry of the judgment or order granting the motion….

*See also* R.C. 2945.67; *State v. Davidson,* 17 Ohio St.3d 132, 135 (1985); *State v. Bassham,* 94 Ohio St.3d 269, 271-272 (2002).

{¶20} Our review of the record reveals a certifying statement by the prosecutor as outlined in Crim.R. 12(K). Therefore, we have jurisdiction to proceed to the merits of this appeal.

**I.**

{¶21} In its first assignment of error, the State contends that the trial court's findings-of-fact were incomplete because the entry failed to address certain evidence, which was necessary for a proper exigent circumstances analysis, presented at the suppression hearing. Specifically, the State points to the trial court's failure to discuss or explain: (1) the trial court's reliance on the passage of more than an hour before entry; (2) the shell casing found on the porch of the Residence; (3) a witness' report that people were running in and out of the Residence and that possible shooting victims might be inside; and (4) the officers' observation of movement of the curtains, and hearing a television or stereo, from within the Residence. Appellant's Brief at 5-6.

{¶22} To support this argument, the State relies on *State v. Murphy*, 2019-Ohio-515 (9th Dist.). In *Murphy*, the Ninth District Court of Appeals reversed where the trial court's entry provided only a sparse recitation of events without factual findings to support its legal conclusions. The appellate court emphasized that the absence of specific findings impeded meaningful review, citing *State v. Purefoy*, 2017-Ohio-79, ¶ 18 (9th Dist.); *State v. Martucci*, 2018-Ohio-3471, ¶ 11 (9th Dist.); and *State v. Soto*, 2017-Ohio-4348, ¶¶ 17-18 (9th Dist.). *See also State v. Camper*, 2023-Ohio-4673, ¶ 39 (10th Dist.); *State v. Massey*, 2020-Ohio-100, ¶ 24 (12th Dist.).

{¶23} The present case is distinguishable from *Murphy*. Here, the trial court did not omit critical facts; rather, it expressly acknowledged the circumstances the State highlights. The court noted that shots had been fired in the area, that a shooting victim had already been discovered, and that "bullet casings were observed in the street and on steps leading up to the front door of [the Residence]." The trial court acknowledged the reports and observations cited by the State but then explained that, despite this

information, officers remained outside for more than an hour before entering.  That delay, in the court's view, undermined any claim of urgency.

{¶24}  Thus, unlike in *Murphy*, the trial court made factual findings sufficient to permit appellate review. Its analysis reflects not an omission of evidence but a weighing of such evidence against the constitutional standard.  Because the trial court's findings are adequate to support its legal conclusion, the State's argument is without merit.

{¶25}  Accordingly, we overrule the State's first assignment of error.

II.

{¶26}  In its second assignment of error, the State contends that the trial court's factual findings are against the manifest weight of the evidence.  Specifically, the State argues that the circumstances confronting the officers—reports of gunfire, the discovery of a shooting victim nearby, the presence of shell casings on and around the Residence, and indications of movement and sound inside—established exigent circumstances sufficient to justify the warrantless entry.

**Standard of Review – Motion to Suppress**

{¶27}  Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  At a suppression hearing, the trial judge serves as the trier of fact and is therefore in the best position to resolve factual disputes and assess witness credibility.  *State v. Dunlap*, 73 Ohio St.3d 308, 314 (1995); *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982).  Accordingly, we must accept the trial court's factual findings if they are supported by competent, credible evidence. *Burnside*; *State v. Diaw,* 2025-Ohio-2323, ¶8; *State v. Hale*, 2024-Ohio-4866, ¶12, citing *State v. Fanning,* 1 Ohio St.3d 19, 20 (1982).  Once those facts are accepted

as true, however, the application of the law to the facts is subject to de novo review. *Id*.; *Ornelas v. United States*, 517 U.S. 690 (1996). In conducting this review, we also give due weight to inferences drawn by trial judges and law enforcement officers experienced in local conditions. *Ornelas*, 517 U.S. at 698.

**Warrantless Searches Are Presumptively Unreasonable**

{¶28} Both the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect individuals from unreasonable searches and seizures. *State v. Leak,* 2016-Ohio-154, ¶ 13; *State v. Robinette,* 80 Ohio St.3d 234, 238-239 (1997). As the United States Supreme Court has made clear, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980); *see also*, *Diaw,* 2025-Ohio-2323, ¶ 14. Indeed, "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. United States Dist. Court for E. Dist. of Michigan, S. Div.,* 407 U.S. 297, 313 (1972). *Accord, State v. Sturgill,* 2022-Ohio-4574, ¶ 19 (5th Dist.).

{¶29} When a defendant moves to suppress evidence recovered during a warrantless search, the State has the burden of showing that the search fits within one of the defined exceptions to the Fourth Amendment's warrant requirement. *City of Athens v. Wolf*, 38 Ohio St.2d 237, 241 (1974); *State v. Kessler*, 53 Ohio St.2d 204, 207 (1978), quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 454-455 (1971), *holding modified by Horton v. California, 496 U.S. 128, 110 S.Ct. 2301 (1990)*; *State v. Wintermeyer*, 2019-Ohio-5156, ¶ 18; *State v. Banks-Harvey*, 2018-Ohio-201, ¶ 18.

**Exigent Circumstances and the Emergency Aid Exception**

{¶30} One such exception to the requirement of a search warrant arises when exigent circumstances demand immediate police action. *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006). Although the range of possible exigencies cannot be exhaustively listed, exigent circumstances generally must include the necessity for immediate action which will "'protect or preserve life or avoid serious injury'," or will protect a governmental interest that outweighs the individual's constitutionally protected privacy interest. *State v. Price*, 134 Ohio App.3d 464, 467 (9th Dist. 1999), quoting *Mincey v. Arizona*, 437 U.S. 385, 392-393 (1978), *see also State v. Sturgill,* 2022-Ohio-4574, ¶ 20 (5th Dist.).

{¶31} Courts have also recognized the "emergency aid exception," under which officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent harm. *Michigan v. Fisher*, 558 U.S. 45, 49 (2009); *Brigham City, Utah v. Stuart*, 547 U.S. at 403-406. Importantly, officers need not possess "ironclad proof" of a life-threatening injury; rather, the test is whether there was an objectively reasonable basis for believing that immediate aid was required. *Fisher*, 558 U.S. at 49.

{¶32} In performing their community-caretaking role, police may intrude upon privacy to enhance public safety, but the key limitation is the reasonableness demanded by the Fourth Amendment. *State v. Stanberry*, 2003-Ohio-5700, ¶ 23 (11th Dist.); *State v. Sturgill*, 2022-Ohio-4574, ¶ 21 (5th Dist.). Thus, the officers' conduct must be evaluated objectively under the totality of the circumstances. *State v. Wade*, 2019-Ohio-4565, ¶ 22 (5th Dist.).

**Application to This Case**

{¶33}   Here, the trial court determined that no exigent circumstances justified the warrantless entry into the Residence. That determination is supported by competent, credible evidence.  Officer Schaaf testified that police remained outside for more than an hour before entering, and that the decision to enter was made only after consultation with a superior officer.  Supp. T. at 55.  The trial court also found that no cries for help were heard, no blood or bullet holes were observed on the residence, and no other objective indicators suggested anyone inside required immediate assistance.   While there may have been movement or noise coming from within the Residence, we find such benign circumstances do not, without more, support that immediate aid was required within the Residence sufficient to justify warrantless entry.

{¶34}   Although the State points to a vague witness report that someone might be inside, the trial court was entitled to weigh that testimony against the absence of corroborating evidence.  As the Supreme Court of Ohio has held, the weight and credibility of evidence are primarily for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus; *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).   This principle is applicable to suppression hearings as well as trials. *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus; *State v. Fanning,* 1 Ohio St.3d 19, 20 (1982); *State v. Mills*, 62 Ohio St.3d 357, 366 (1992).  The one-hour delay before attempting to enter the Residence undermines the State's claim of exigency, because it demonstrates that the officers themselves did not perceive an immediate threat to life or safety. See *Mincey v. Arizona*, 437 U.S. 385, 392-393 (1978) (exigent circumstances require an urgent need to act to protect life or prevent serious injury).

{¶35} Given the totality of the circumstances, the trial court reasonably determined that exigent circumstances did not exist to excuse the officers from obtaining a warrant before entering the Residence. The trial court's findings are supported by competent, credible evidence and do not compel a different legal conclusion.

{¶36} The State's second assignment of error is overruled.

For the reasons stated in our accompanying Opinion, the judgment of the Richland County Court of Common Pleas is affirmed.

Costs to Appellant.

By: Popham, J.

Hoffman, P.J. and

Montgomery, J. concur.